UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Amazon Content Services, LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Netflix Studios, LLC; Paramount Pictures Corporation; Sony Pictures Television Inc.; Twentieth Century Fox Film Corporation; Universal City Studios Productions LLLP; Universal Cable Productions LLC; Universal Television LLC; Warner Bros. Entertainment Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> Set Broadcast, LLC d/b/a Setvnow; Jason Labossiere; Nelson Johnson, <br><br> Defendants. | Case No. 2:18-CV-03325-MWF (AS) <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFFS' NOTICE OF MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT SET BROADCAST, LLC D/B/A SETVNOW** |

The Court has considered the Motion for Default Judgment and Permanent Injunction of Plaintiffs Amazon Content Services, LLC, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Netflix Studios, LLC, Paramount Pictures Corporation, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, and Warner Bros. Entertainment Inc., ("Plaintiffs") against Defendant Set Broadcast, LLC d/b/a Setvnow ("Defendant" or "Set Broadcast"), all documents submitted in support thereof, and the pleadings and papers on file.

Good cause appearing to enter the requested relief, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment and Permanent Injunction is **GRANTED.**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Plaintiffs bring claims against Set Broadcast for secondary copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101 et seq.

2. This Court has jurisdiction to enter judgment in this matter. Taking the Complaint's well-pleaded allegations as true, the Court has personal jurisdiction because Set Broadcast has purposefully consummated transactions with residents of California and purposefully availed itself of the forum by conducting activities here. Set Broadcast induced the infringement of Plaintiffs' Copyrighted Works with the knowledge and intent that its activities would cause significant harm in California—the locus of most of Plaintiffs' production and distribution operations. Compl. ¶¶ 21-22. Exercise of jurisdiction is therefore reasonable. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230-31 (9th Cir. 2011); *see also O'Reilly v. Valley Ent'mt, Inc.*, 2011 WL 13258234, at *2-4 (specific jurisdiction over infringing defendant reasonable in default judgment) (N.D. Cal. Jan. 4, 2011), *adopted by*, 2011 WL 13260734 (N.D. Cal. Feb. 16, 2011).

The Court also has subject-matter jurisdiction over this action, as Plaintiffs' claims arise under the federal Copyright Act. *See* 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

This Court further has continuing jurisdiction to enforce the terms and provisions of this Judgment and Permanent Injunction. Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as well as 28 U.S.C. § 1400(b).

3. Granting default judgment is within the Court's discretion. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The Court may enter default judgment following the entry of default by the Clerk of the Court. Fed. R. Civ. P 55(b); *PepsiCo*, 238 F. Supp. 2d at 1174. "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." *PepsiCo*, 238 F. Supp. 2d at 1175. The Court may hold hearings to conduct an accounting, determine the amount of damages, establish the truth of any allegation, or investigate any other matter. Fed. R. Civ. P. 55(b).

4. A motion for default judgment must also be supported by a declaration and must (a) state when and against what party the default was entered; (b) identify the pleading to which default was entered; (c) state whether the defaulting party is an infant or incompetent person; (d) state that the Servicemembers Civil Relief Act, 50 U.S.C. § 521, does not apply; and (e) state that notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2). Local Rule 55-1.

5. Plaintiffs have complied with Local Rule 55-1. The Court finds that the Clerk entered default against Set Broadcast on May 28, 2019. Kim Decl. 2; ECF Dkt. 49. Default was entered as to the Complaint. Kim Decl. 2; ECF Dkt. 49. Set Broadcast is not an infant, incompetent person, or subject to the Servicemembers Civil Relief Act. Kim Decl. 3. Plaintiffs have properly served the Notice of Motion and Motion for Default Judgment on Set Broadcast. Kim Decl. 4.

6. In the Ninth Circuit, a court may consider the following factors in considering whether to enter default judgment:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money

> at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). For the reasons discussed below, the Court concludes that these factors weight in favor of the entry of default judgment against Set Broadcast in this case.

7. The first *Eitel* factor weighs in favor of default judgment, as Plaintiffs will suffer prejudice absent entry of default judgment. Without a default judgment, Plaintiffs will be deprived of any remedy for the injuries Plaintiffs have sustained from Set Broadcast's widespread infringement. *See Star Fabrics, Inc. v. 3Free NYC, Inc.*, 2013 WL 12124095, at *2 (C.D. Cal. Dec. 9, 2013) (first factor favors plaintiff where it would otherwise be unable to recover damages from infringer); *see also China Cent. Tele. v. Create New. Tech. (HK) Ltd.*, No. CV 15-01869 MMM (AJWx), 2015 WL 12732432, at *8 (C.D. Cal. Dec. 7, 2015) (same).

8. The second and third *Eitel* factors are also satisfied. These factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. To state copyright infringement claims, Plaintiffs must (1) "show ownership" and (2) a violation of "at least one exclusive right" under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiffs satisfy both requirements.

9. Plaintiffs have submitted evidence of Copyrighted Works that were infringed through the Setvnow service, including a list of Copyrighted Works and certificates of registration issued by the Copyright Office for each Work. *See* Kim Decl. Exs. 4-55. These certificates create a presumption of copyright validity and ownership. 17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

10. Set Broadcast intentionally induced the infringement of Plaintiffs' Copyrighted Works, specifically, the infringement of their exclusive right of public performance, 17 U.S.C. § 106(4). ECF Dkt. 1. Under the Supreme Court's decision in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005), a party that distributes a product "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." A plaintiff establishes inducement liability in the Ninth Circuit liability by showing: "(1) distribution of a device or product [by defendant], (2) acts of infringement [by third parties], (3) an object [of the defendant] of promoting [the device's or product's] use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (citing *Grokster*, 545 U.S. at 936-37). The Complaint pleads all four elements.

11. *First*, Set Broadcast distributed and sold the Setvnow service that enabled and encouraged the infringement of Plaintiffs' public performance right. Compl. ¶¶ 1-4, 28-45, 49-50, 58-60; van Voorn Decl. ¶¶ 4-6; *see Fung*, 710 F.3d at 1033 ("services available on the Internet" provides a basis for inducement liability).

12. *Second*, Set Broadcast's objective in distributing the Setvnow service was to facilitate third parties' unauthorized streaming, i.e., public performance, of Plaintiffs' Copyrighted Works. Compl. ¶¶ 1-4, 29, 41-47. Set Broadcast thereby induced the direct infringement of Plaintiffs' public performance right. *See TickBox TV LLC*, 2019 WL 1568698, at *9-10 (citing *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 446-47 (2014) (service that made Internet streams of content performed publicly)); *see also, e.g.*, *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) ("undisputed" that defendant's Internet streaming of television programs infringed public performance right); *Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1010 (C.D. Cal. 2011) ("*Zediva*") (Internet streaming of

movies and television shows from remote DVD players to users is a public performance).

13.   *Third*, Set Broadcast knowingly distributed the Setvnow service "with the object of promoting its use to infringe copyright." *Fung*, 710 F.3d at 1034 (quoting *Grokster*, 545 U.S. at 936-37).  Set Broadcast encouraged its customers to use the service to obtain infringing streams of, among other things, "new movies, new releases," "Netflix exclusive shows," and "on-demand television shows and movies that you were looking for."  Compl. ¶¶ 41-43.

14.   *Fourth*, the causation requirement is satisfied.  "[I]f one provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner, that person is liable for the infringement that occurs through the use of the service." *Fung*, 710 F.3d at 1037.  Set Broadcast distributed and promoted the Setvnow service for infringing uses, and third parties predictably engaged in precisely that infringement.

15.   The third *Eitel* factor also weighs in favor of default judgment.  This factor considers the "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." *PepsiCo, Inc.*, 238 F.Supp.2d at 1176.  Plaintiffs seek the maximum statutory damages award of $150,000 per work infringed.  Considering the sheer volume of unauthorized content available on the Setvnow service, its advertised (and actual) availability round-the-clock, and Set Broadcast's 260,000 monthly users—Set Broadcast infringed Plaintiffs' Copyrighted Works willfully, flagrantly, and on a massive scale.  Under these circumstances, the Court finds the requested $7,650,000 statutory damages award to be proportional and reasonable in relation to the seriousness of Set Broadcast's willful misconduct.  *See China Cent. Tele.*, 2015 WL 12732432, at *14 (finding $55,460,691 award reasonable and citing cases).

16.   The fourth *Eitel* factor also weighs in favor of default judgment.  A defendant's failure to respond to a complaint indicates that "the likelihood that any

genuine issue may exist is, at best, remote." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  As default has been entered against Set Broadcast, there is no possible dispute concerning the material facts because the factual allegations of Plaintiffs' complaint are taken as true.  *PepsiCo*, 238 F. Supp. 2d at 1177.

17. The fifth *Eitel* factor is also satisfied, as there are no facts to suggest that Set Broadcast's failure to respond to the Court's April 17, 2019 Order to Show Cause or the Clerk's May 19, 2019 entry of default resulted from excusable neglect. Set Broadcast has failed to comply with the Court's Order, failed to retain new counsel following the withdrawal of its former counsel, failed to file a new Answer, and otherwise failed to participate in this litigation.

18. The final *Eitel* factor weighs against default judgment.  This factor considers the preference for deciding cases on the merits, *see Eitel*, 782 F.2d at 1471-72, but "this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered," *Warner Bros. Ent'mt Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004).  Set Broadcast's default is the reason there can be no decision on the merits.  This factor should not reward Set Broadcast's refusal to satisfy its obligations to this Court and to Plaintiffs.

*Statutory Damages*

19. Plaintiffs request the award of statutory damages.  The Copyright Act authorizes statutory damages of $750 to $30,000 per infringed work, and enhanced statutory damages of up to $150,000 per infringed work for willful infringement.  17 U.S.C. § 504(c)(1)-(2). "Statutory damages are particularly appropriate in a case . . . in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiffs actual damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

20. "Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant" in order to deter future infringement. *L.A. News Serv. v. Reuters Tele. Int'l, Ltd.* 149 F.3d 987, 996 (9th Cir. 1998). Here, an award of $7,650,000 reflects the statutory maximum of $150,000 for each of the 51 representative works infringed by Set Broadcast. Plaintiffs assert that this award would serve the most fundamental purposes of statutory damages: compensation, punishment, and deterrence. The Court agrees. Though this amount cannot compare to the harm caused by the widespread infringement of Plaintiffs' Copyrighted Works, the magnitude of this award will serve as a deterrent to other wrongdoers.

21. As pled in the Complaint, Set Broadcast willfully induced the infringement of Plaintiffs' Copyrighted Works. *See Caridi*, 346 F. Supp. 2d at 1074 ("Because of the entry of default … the Court must take [plaintiffs'] allegation of willful infringement as true."). Set Broadcast's advertisements and promotions for the Setvnow service leave no doubt about the character of its infringement. Setvnow was a service that promised access to "500+ channels" with "Thousands of On Demand entertainment options" for "ONLY $20 PER MONTH." Compl. ¶ 29. Sponsored reviewers described the service aptly: "some [content] that you might have to rent somewhere else i[s] free here in your $20 subscription per month and your favorite TV shows are here too," and "You have new releases right there and you simply click on the movie … you click it and click on play again and here you have the movie just like that in 1 2 3 in beautiful HD quality." Kim Decl. ¶ 6. Given the obviously infringing nature of the streams Set Broadcast offered to its customers, Set Broadcast knowingly and willfully infringed Plaintiffs' Copyrighted Works.

22. Plaintiffs have submitted a representative sample of 51 registered Copyrighted Works that investigators confirmed were illegally streamed on the Setvnow service. *See* Compl. ¶ 16; van Voorn Decl. ¶¶ 4-6; Kim Decl. ¶¶ 11-62, Exs. 4-55 (Certificates of Registration and List of Works). As discussed *supra*, these 51 representative works represent a tiny fraction of the thousands of Plaintiffs' Copyrighted Works that Set Broadcast likely illegally infringed, given that the Setvnow service not only offered "Thousands of On demand" options, but also streamed "over 500 Live" television channels with Plaintiffs' Copyrighted Works. Set Broadcast also appears to have had over 260,000 monthly subscribers to the Setvnow service, thus the sheer *number* of unauthorized streams, i.e., infringing public performances, of Plaintiffs' Copyrighted Works, likely reached the hundreds of thousands. *See* Kim Decl. ¶ 9, Ex. 3.

23. The statutory maximum is appropriate in cases that involve widespread harm like that inflicted by Set Broadcast. Courts in this circuit and beyond have awarded the statutory maximum in default judgment actions involving similar widespread and flagrant infringement. *See, e.g.*, *Perfect 10, Inc., v. Talisman Comm. Inc.,* No. CV99-10450 RAP MCx, 2000 WL 364813, *3-4 (C.D. Cal. Mar. 27, 2000) (awarding maximum statutory damages per infringed work for willful infringement on default judgment); *Caridi*, 346 F. Supp. 2d at 1074 (same); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511-12 (E.D. Va. 2003) (same).

24. The $7,650,000 award Plaintiffs seek is proportional to the immense harm Set Broadcast has inflicted on Plaintiffs by inducing the widespread, unauthorized streaming of Plaintiffs' Copyrighted Works. Set Broadcast has deprived Plaintiffs of their exclusive rights to control how, when, and to whom they will disseminate their Copyrighted Works. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their

labors."); *see also Zediva*, 824 F. Supp. 2d at 1012-13 (defendants' unauthorized streaming "interfere[s] with Plaintiffs' ability to control the use and transmission of their Copyrighted Works, thereby causing irreparable injury.").

25. Set Broadcast's illegal conduct has irreparably undermined the legitimate market in which consumers can purchase access to the same works, into which Plaintiffs have invested significantly. *See e.g.*, *Grokster*, 545 U.S. at 928-29 (discussing harms from unauthorized distribution of copyrighted works); *China Cent. Tele.*, 2015 WL 3649187, at *13 (infringing video streaming service caused irreparable harm because it "interfered with plaintiffs' ability to develop a lawful market for internet distribution"); *TickBox*, 2018 WL 1568698, at *12-13. As is evident from Set Broadcast's advertising campaign, the Setvnow service was intended to compete with authorized and legitimate offerings, including authorized cable and broadcast networks and licensed VOD services. *See* Compl. ¶¶ 1-4, 42-44. Set Broadcast has willfully infringed Plaintiffs' Copyrighted Works and, in doing so, caused Plaintiffs and their entire business model immense damage. The $7,650,000 statutory damages sought here therefore represents only a fraction of the actual damages inflicted by Set Broadcast on Plaintiffs. Accordingly, the Court awards Plaintiffs the requested $150,000 statutory damages per work infringed for a total award for $7,650,000.

*Permanent Injunction*

26. Plaintiffs also request that the Court permanently enjoin Set Broadcast from inducing infringement of their Copyrighted Works. The Copyright Act authorizes courts to grant injunctive relief "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). Apparently, Set Broadcast's Setvnow service is no longer available. Plaintiffs argue, however, that permanent injunctive relief is still appropriate

because voluntary cessation of infringing activities is insufficient. *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221-22 (C.D. Cal. 2007) (rejecting purported voluntary "reformation" by infringer and imposing permanent injunction); *see also Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (affirming permanent injunction where defendant voluntarily ceased infringing conduct). The Court agrees.

27. Set Broadcast's default is an admission of the factual allegations regarding liability. Though the Setvnow service appears to no longer be available, Set Broadcast's apparent cessation of its willful and flagrant infringement does not prevent this Court from exercising its discretion to permanently enjoin Set Broadcast from infringing Plaintiffs' Copyrighted Works. There is a significant threat of continuing irreparable injuries to Plaintiffs, which, in conjunction with the strong public interest in the enforcement of the copyright laws, outweighs the nominal hardship to Set Broadcast.

28. *First*, there is a significant threat of future infringement and voluntary cessation of infringing conduct is no defense to a permanent injunction. In *Grokster*, for example, the defendant-infringer attempted to avoid a permanent injunction by asserting voluntary "reformation" of its infringing ways. *Grokster*, 518 F. Supp. 2d at 1221-22. Rejecting these self-serving statements, the district court found that the evidence in the record "warranted … an inference" of future infringement. *Id.* at 1221. As is the case here, the "'overwhelming' evidence of [defendant's] illegal objective … resulted in a 'staggering' amount of infringement." *Id.* And, like the defendant in *Grokster*, Set Broadcast's "business model has depended on inducement and the company would financially benefit from further infringement." *Id.* Set Broadcast apparently sold hundreds of thousands of monthly subscriptions to its Setvnow service, and it sold these subscriptions by advertising the availability of "Thousands of On Demand" options and "over 500 live" television channels that featured Plaintiffs' Copyrighted Works. As in *Grokster*, Set

Broadcast has every financial incentive to return to its infringing ways. While the Setvnow service is apparently no longer available, *see* Kim Decl. ¶ 10, absent a permanent injunction, nothing will prevent Set Broadcast from launching yet another streaming service that serves the exact same function as the Setvnow service: providing high-quality, high-speed, and completely illegal streams of Plaintiffs' Copyrighted Works to customers. "[T]he entire purpose of an injunction is to take away defendant's discretion not to obey the law." *Canadian Lumber Trade Alliance v. United States*, 441 F. Supp. 2d 1259, 1266 (CIT 2006). In light of its willful and egregious conduct, Set Broadcast should not be afforded that discretion.

29.   *Second*, an award of monetary damages alone will not adequately compensate Plaintiffs for the loss of control over the Copyrighted Works, the damage to their business goodwill, and harm to the continued advancement of the legitimate online market for distribution of creative works. *See TickBox*, 2018 WL 1568698, at *13 ("[I]t is unlikely that money damages could adequately compensate for difficult-to-quantify harms to Plaintiffs' business models and relationships" from unauthorized streaming); *Zediva*, 824 F. Supp. 2d at 1013 (same). Moreover, given Set Broadcast's default, collecting any monetary award will likely prove quite challenging. Under these circumstances, a monetary remedy is insufficient. *See, e.g.*, *Grokster*, 518 F. Supp. 2d at 1219 ("Damages are no remedy at all if they cannot be collected…."); *Lava Records, LLC v. Ates*, Civ. A-05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (awarding permanent injunction because of "the need to prevent irreparable harm to Plaintiffs, which will not be remedied by a damage award that may or may not be collectible").

30.   *Third*, the balance of hardships favors Plaintiffs. Any "harm" to Set Broadcast "does not merit significant equitable protection" as it is the result of its own illegal conduct. *Disney Enter. v. VidAngel*, 869 F.3d 848, 867 (9th Cir. 2017).

In contrast, absent a permanent injunction, Plaintiffs will face the ongoing threat of continuing, irreparable harm by Set Broadcast and future infringement.

31. *Fourth*, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures." *VidAngel*, 869 F.3d at 867.

32. The Court therefore finds that Plaintiffs have demonstrated an entitlement to permanent injunctive relief.

**JUDGMENT AND PERMANENT INJUNCTION**

Based on the foregoing findings of facts and conclusions of law, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

33. Set Broadcast is ordered to pay damages to Plaintiffs in the amount of $7,650,000.

34. Set Broadcast is ordered to pay post-judgment interest, pursuant to 28 U.S.C. § 1961(a), "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

35. Set Broadcast, LLC d/b/a Setvnow, all of its agents, servants, and employees, and all persons in active concert or participation or in privity with any of them who receive actual notice of this Order (collectively, the "Defendant") are immediately and permanently enjoined according to the following terms:

36. For the purposes of this Judgment and Permanent Injunction against Defendant, the following definitions shall apply:

    a. "ST-110 set-top box" shall refer to the hardware devices pre-loaded with copyright infringing software, addons, programs, applications, and all related services that Defendant marketed, promoted, sold, and supported.

    b. "Setvnow service" shall refer to the copyright infringing software, programs, applications, and services that transmit or otherwise

communicate television programs and motion pictures over the Internet that Defendant marketed, promoted, sold, and supported.

      c.     "Copyrighted Works" shall mean all copyrighted works (and any portions thereof) in which the Plaintiffs, individually or jointly, (or any parent, subsidiary, or affiliate of any of the Plaintiffs) owns or controls an exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq.

37.    Defendant shall be permanently restrained and enjoined from infringing, by any means, directly or indirectly, any of Plaintiffs' exclusive rights under the Copyright Act in the Copyrighted Works. Defendant is further permanently enjoined as follows:

      a.     Shall permanently cease all operation of the Setvnow service and ST-110 set-top box, including without limitation services related to the Setvnow service within five (5) days of entry of this Judgment and Permanent Injunction.

      b.     Shall be further enjoined from operating any website, system, software, or service that is substantially similar to the Setvnow service.

      c.     Shall be further enjoined from distributing, selling, advertising, marketing, or promoting the ST-110 set-top box or any substantially similar computer hardware device or related software that contains, connects to, transmits, , streams, hosts, provides access to, or otherwise publicly performs, directly or indirectly, by means of any device or process, Plaintiffs' Copyrighted Works without authorization.

      d.     Shall not directly or indirectly take any additional steps to release publicly, distribute, transfer, or give any source code, object code, other technology, domain names, trademarks, brands, assets or goodwill in any way related to the Setvnow service.

38.    Service by mail upon Set Broadcast of a copy of this Default Judgment and Permanent Injunction once entered by the Court is deemed sufficient notice to

Set Broadcast under Federal Rule of Civil Procedure 65. It shall not be necessary for Set Broadcast to sign any form of acknowledgement of service.

39. This Permanent Injunction shall bind Set Broadcast and all of its agents, servants, and employees, and all persons in active concert or participation or in privity with any of them who receive actual notice of this Order. Set Broadcast shall provide a copy of this Permanent Injunction to its officers, agents, servants, employees, attorneys, principals, shareholders, members, and current and future administrators or moderators of the any online forums associated with Set Broadcast.

40. Violation of this Permanent Injunction shall expose Set Broadcast and all other persons bound by this Permanent Injunction to all applicable penalties, including contempt of Court.

41. Within 14 days of the date the Court enters this Permanent Injunction, Set Broadcast shall file and serve a report in writing and under oath setting forth in detail the manner and form with which Set Broadcast has complied with the Permanent Injunction.

42. The Court finds there is no just reason for delay in entering this Default Judgment and Permanent Injunction and, pursuant to Fed. R. Civ. P. 54(a), the Court directs immediate entry of this Default Judgment and Permanent Injunction.

43. The Court shall retain jurisdiction of this action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this Default Judgment and Permanent Injunction.

**IT IS SO ORDERED**

1 | DATED: June ___, 2019

_____
UNITED STATES DISTRICT JUDGE
HON. MICHAEL W. FITZGERALD