KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
MELINDA E. LEMOINE (State Bar No. 235670)
Melinda.lemoine@mto.com
ELIZABETH A. KIM (State Bar No. 295277)
elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Amazon Content Services, LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Netflix Studios, LLC; Paramount Pictures Corporation; Sony Pictures Television Inc.; Twentieth Century Fox Film Corporation; Universal City Studios Productions LLLP; Universal Cable Productions LLC; Universal Television LLC; Warner Bros. Entertainment Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> Set Broadcast, LLC d/b/a Setvnow; Jason Labossiere; Nelson Johnson, <br><br> Defendants. | Case No. 2:18-CV-03325-MWF (AS) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS JASON LABOSSIERE AND NELSON JOHNSON** <br><br> Judge:  Hon. Michael W. Fitzgerald <br><br> Date:    November 18, 2019 <br> Time:   10:00 a.m. <br> Ctrm:   5A <br><br> Filed concurrently: <br> Declaration of Elizabeth A. Kim <br> [Proposed] Order |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .....................................2

I.      INTRODUCTION ...................................................................................2

II.     BACKGROUND......................................................................................2

        A.      Factual Background..........................................................................2

        B.      Procedural Background ....................................................................4

        C.      Legal Standard.................................................................................5

        D.      Plaintiffs Have Satisfied the Procedural Requirements for Default Judgment .........6

        E.      The *Eitel* Factors Favor Entry of Default Judgment ......................7

                1.      Plaintiffs Will Suffer Prejudice Absent Entry of Default Judgment..............7

                2.      The Merits of Plaintiffs' Claims and Sufficiency of the Complaint Weigh in Favor of Default Judgment .........8

                3.      The Sum of Money at Stake is Proportional to the Harm ..........................10

                4.      There Is No Possibility of Dispute Regarding Material Facts ...................10

                5.      There Is No Possibility of Excusable Neglect.............................11

                6.      The Policy for Decisions on the Merits Does Not Preclude Default Judgment .........11

        F.      Plaintiffs Are Entitled to All of Their Requested Relief .........................11

                1.      Plaintiffs' Request for Statutory Damages for Willful Copyright Infringement Is Reasonable ...................11

                        (a)     Willfulness .....................................................12

                        (b)     Number of Registered Works....................................12

                        (c)     The Statutory Maximum Is Proportional to the Harm Inflicted by Set Broadcast .........13

                        (d)     Plaintiffs Are Entitled to a Permanent Injunction ..........................14

                        (e)     Post-Judgment Interest ....................................17

III.    CONCLUSION ......................................................................................17

-i-

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)...................................................................8

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
  573 U.S. 431 (2014) ...................................................................................9

*Canadian Lumber Trade Alliance v. United States*,
  441 F. Supp. 2d 1259 (CIT 2006) ...........................................................16

*China Cent. Tele. v. Create New. Tech. (HK) Ltd.*,
  No. CV 15-01869 MMM, 2015 WL 12732432 (C.D. Cal. Dec. 7, 2015) .............................7, 14

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013)................................................................8, 9

*Disney Enter. v. VidAngel*,
  869 F.3d 848 (9th Cir. 2017).......................................................14, 16, 17

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986)..................................................... 6, passim

*Graduate Mgmt. Admission Council v. Raju*,
  267 F. Supp. 2d 505 (E.D. Va. 2003).......................................................13

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) .................................................................................14

*Jackson v. Sturkie*,
  255 F. Supp. 2d 1096 (N.D. Cal. 2003) ...................................................11

*L.A. News Serv. v. Reuters Tele. Int'l, Ltd.*
  149 F.3d 987 (9th Cir. 1998)....................................................................12

*Lava Records, LLC v. Ates*,
  Civ. A-05-1314, 2006 WL 1914166 (W.D. La. July 11, 2006) ................16

*MAI Systems Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993)....................................................................14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011)....................................................................6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007)..............................................15, 16

-ii-

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

**Page**

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ...................................................................................8, 9, 14, 15

*Netflix Studios, LLC et al. v. Dragon Media, Inc. et al.*
  (18-CV-00230-MWF) (No. 17-cv-07496-MWF) ..................................................3

*O'Reilly v. Valley Ent'mt, Inc.*,
  2011 WL 13258234 (N.D. Cal. Jan. 4, 2011) .....................................................6, 7

*PepsiCo, Inc. v. California Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002).......................................................5, 8, 10, 11

*Perfect 10, Inc., v. Talisman Comm. Inc.*,
  No. CV99-10450 RAP MCx, 2000 WL 364813 (C.D. Cal. Mar. 27, 2000) ............13

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
  219 F.R.D. 494 (C.D. Cal. 2003) ..........................................................................10

*Star Fabrics, Inc. v. 3Free NYC, Inc.*,
  2013 WL 12124095 (C.D. Cal. Dec. 9, 2013) .......................................................7

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
  630 F.3d 1255 (9th Cir. 2011).................................................................................8

*Universal City Studios Productions LLLP et al. v. TickBox TV LLC et al.*,
  2018 WL 1568698...................................................................................3, 9, 14, 16

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) ...............................................................................15

*Warner Bros. Ent'mt Inc. v. Caridi*,
  346 F. Supp. 2d 1068 (C.D. Cal. 2004)......................................................11, 12, 13

*Warner Bros. Entm't Inc. v. WTV Sys., Inc.*,
  824 F. Supp. 2d 1003 (C.D. Cal. 2011)........................................................9, 14, 16

*WPIX, Inc. v. ivi, Inc.*,
  691 F.3d 275 (2d Cir. 2012) ....................................................................................9

**FEDERAL STATUTES**

17 U.S.C. § 106 ...........................................................................................................8

17 U.S.C. § 410(c)........................................................................................................8

17 U.S.C. § 501(b) .......................................................................................................7

-iii-

# TABLE OF AUTHORITIES
### (Continued)

**Page**

17 U.S.C. § 502(a)................................................................................................14

17 U.S.C. § 504(c)(1)-(2)..............................................................................10, 11

28 U.S.C. §§ 1331, 1338(a)...................................................................................7

28 U.S.C. § 1961(a).............................................................................................17

**FEDERAL RULES**

Fed. R. Civ. P 55(a)..............................................................................................4

Fed. R. Civ. P 55(b)..............................................................................................5

Fed. R. Civ. P 55(b)(2)......................................................................................1, 2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT
CASE NO. 2:18-CV-03325-MWF (AS)

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 18, 2019, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 5A of the above-captioned Court, located at 350 West First Street, Los Angeles, California, 90012, Plaintiffs Amazon Content Services, LLC, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Netflix Studios, LLC, Paramount Pictures Corporation, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, and Warner Bros. Entertainment Inc., ("Plaintiffs") will and hereby do move pursuant to Federal Rule of Civil Procedure 55(b)(2) for Default Judgment against Defendants Jason Labossiere and Nelson Johnson.

This motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Elizabeth A. Kim; the pleadings and papers on file in this action; and any further evidence or argument that may be presented to the Court at or prior to the submission of this motion.

DATED:  October 7, 2019              MUNGER, TOLLES & OLSON LLP


By:     */s/ Kelly M. Klaus*
        KELLY M. KLAUS
        Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs ask the Court to enter a default judgment against Defendants Jason Labossiere ("Labossiere") and Nelson Johnson ("Johnson") (jointly, "Defendants"). pursuant to Federal Rule of Civil Procedure 55(b)(2).  Defendants failed to respond to this Court's September 5, 2019 Order to Show Cause as to why their Answer filed on June 18, 2018 should not be stricken for failure to participate in the litigation of this matter.  ECF Dkt. 62.  On September 23, 2019, following Defendants' failure to respond, the Court ordered the Clerk of the Court to strike Defendants' Answer and enter default.  ECF Dkt. 63.  The Clerk entered default that same day.  The Court further ordered Plaintiffs to file a motion for default judgment on or before October 7, 2019.  Plaintiffs respectfully submit this motion for default judgment.

The Court granted default judgment against Defendant Set Broadcast, LLC on July 31, 2019.  ECF Dkt. 58 (hereinafter "Set Broadcast Default Judgment Order").  Defendants Labossiere and Johnson are the individual Defendants who operated, managed, and ultimately profited from the willful, unlawful business of Set Broadcast.  Settled law permits entry of default against willful infringers like Labossiere and Johnson who refuse to participate in their own defense.  Plaintiffs therefore respectfully request that the Court enter default judgment against Labossiere and Johnson and hold them jointly and severally liable for the harm they inflicted upon Plaintiffs.

## II.   BACKGROUND

### A.   Factual Background

Jason Labossiere is the owner and operator of Set Broadcast, LLC.  Compl. ¶ 18.  Nelson Johnson, is an employee and former authorized manager of Set Broadcast, LLC.  Compl. ¶ 19; Set Broadcast Default Judgment Order at 2.  Jointly, Defendants Labossiere and Johnson are illegal infringers that promised customers they could "Stream over 500 live channels" of television and "Thousands of On

-2-

Demand entertainment options" for "only $20/month" by way of their "Setvnow" service.  Compl. ¶ 1; ECF Dkt. 58 (hereinafter "Set Broadcast Default Judgment Order").

Like the defendants in *Universal City Studios Productions LLLP et al. v. TickBox TV LLC et al.*, 2018 WL 1568698 (No. 17-cv-07496-MWF), and *Netflix Studios, LLC et al. v. Dragon Media, Inc. et al.*, (18-CV-00230-MWF), Defendants encouraged widespread infringement through unauthorized Internet streams of movies and television shows by enabling their customers to find high-quality, high-speed, reliable—but completely illegal—content sources.



*See* ECF Dkt. 53-2 ¶ 7, Ex. 1; Set Broadcast Default Judgment Order at 2.

Defendants offered illegal access to streams of Plaintiffs' Copyrighted Works. *See* Set Broadcast Default Judgment Order at 2 ("Defendants promote Setvnow as a substitute for cable television subscriptions and video-on-demand services like Amazon Prime Video and Netflix.").  The Setvnow service provided customers with a built-in media player, curated menus of live television channels, and on-demand streams of movies and television shows.  Compl. ¶ 31; Set Broadcast Default Judgment Order at 2.

As set forth in the Declaration of Jan van Voorn submitted in support of Plaintiffs' Motion for Default Judgment against Set Broadcast, LLC (ECF Dkt. 53-1), investigators using the Setvnow service searched for and found links to each and every one of the 51 Copyrighted Works listed in Exhibit A to the Complaint.  ECF

Dkt. 53-1 ¶¶ 4-6.  The investigators confirmed that the links Setvnow returned unauthorized streams of each of the 51 Copyrighted Works listed in Exhibit A to the Complaint.  *Id.* ¶ 6.

### B.   Procedural Background

Plaintiffs filed their Complaint on April 20, 2018.  ECF Dkt. 1.  Defendants retained counsel, and pursuant to stipulation, filed an Answer on June 19, 2018, ECF Dkt. 18.  The parties exchanged some initial discovery.  They also had preliminary settlement discussions but these went nowhere.  Plaintiffs ultimately had to move to compel Defendants' depositions.  ECF Dkt. 22.  Then, on February 25, 2019, Joseph Shapiro, counsel for Defendants and co-Defendant Set Broadcast moved to withdraw.  ECF Dkt. 34.  The Court denied Mr. Shapiro's motion to withdraw without prejudice, ECF Dkt. 39, but granted his corrected motion to withdraw on April 17, 2019, ECF Dkt. 45.

In the Order granting the motion to withdraw, the Court stayed this action until May 13, 2019, to permit Defendants to file a notice with the Court that they had retained new counsel.  ECF Dkt. 45 at 2.  In that same Order, the Court ordered Set Broadcast to show cause why its Answer should not be stricken.  Set Broadcast failed to respond to the Court's Order to Show Cause, and on May 20, 2019, Plaintiffs applied to the Clerk for entry of default, ECF Dkt. 47, and the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(a) on May 29, 2019, ECF Dkt. 49.  Plaintiffs moved for default judgment and a permanent injunction against Set Broadcast, LLC, ECF Dkt. 53, which the Court entered on July 31, 2019, ECF Dkt. 59.  Defendants Labossiere and Nelson did not file any notice with the Court in response to the Court's April 17, 2019 Order.

Plaintiffs continued to attempt to litigate this matter, but Defendants Labossiere and Nelson refused to participate.  On September 4, 2019, after multiple failed attempts to communicate with Defendants, Plaintiffs filed a Status Report and Request for Briefing Schedule and Guidance re Notice Procedure for Motion for

Default Judgment.  ECF Dkt. 61.  On September 5, 2019, the Court issued an Order to Show Cause directing Defendants Labossiere and Nelson to show cause, in writing, no later than September 18, 2019, their full mailing addresses and telephone numbers, as well as why their Answer filed on June 18, 2018 should not be stricken for failure to participate in the litigation of this matter.  ECF Dkt. 62.  September 18 came and went without a response from Defendants.

On September 23, 2019, following Defendants' failure to respond, the Court ordered the Clerk of the Court to strike Defendants' Answer and enter default.  ECF Dkt. 63.  The Clerk entered default that same day.  The Court further ordered Plaintiffs to file a motion for default judgment on or before October 7, 2019.  Accordingly, Plaintiffs submit the instant motion.

### C. Legal Standard

Granting default judgment is within the Court's discretion.  *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  The Court may enter default judgment following the entry of default by the Clerk of the Court.  Fed. R. Civ. P 55(b); *PepsiCo*, 238 F. Supp. 2d at 1174.  "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages."  *PepsiCo*, 238 F. Supp. 2d at 1175.  The Court may hold hearings to conduct an accounting, determine the amount of damages, establish the truth of any allegation, or investigate any other matter.  Fed. R. Civ. P. 55(b).

In the Ninth Circuit, a court may consider the following factors in considering whether to enter default judgment:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy

underlying the Federal Rules of Civil Procedure favoring decisions on the merits

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The weight of these factors compel the entry of default judgment against Defendants in this case.

**D.**   **Plaintiffs Have Satisfied the Procedural Requirements for Default Judgment**

In compliance with Local Rule 55-1, Plaintiffs' motion for default judgment is supported by the Kim Declaration, which establishes that:

- The Clerk entered default against Defendants on September 23, 2019. Kim Decl. ¶ 2; ECF Dkt. 64.

- Default was entered as to the Complaint.  Kim Decl. ¶ 2; ECF Dkt. 64.

- Defendants Labossiere and Johnson are not infants, incompetent persons, or subject to the Servicemembers Civil Relief Act.  Kim Decl. ¶¶ 3, 4.

- Plaintiffs have served the Notice of Motion and Motion for Default Judgment on Defendants.  Kim Decl. ¶¶ 5, 6.

This Court has jurisdiction to enter judgment in this matter.  Taking the Complaint's well-pleaded allegations as true, the Court has personal jurisdiction because Defendants have purposefully consummated transactions with residents of California and purposefully availed themselves of the benefits of the forum District by conducting activities here.  Plaintiffs' claims arise from Defendants' forum-related activities, including openly encouraging their customers in California to obtain streams of infringing content and using Plaintiffs' or their affiliates' trademarks for television channels to demonstrate the range of available infringing content.  Defendants induced the infringement of Plaintiffs' Copyrighted Works with the knowledge and intent that their activities would cause significant harm in California—the locus of most of Plaintiffs' production and distribution operations. Compl. ¶¶ 21-22.  Exercise of jurisdiction is therefore reasonable.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230-31 (9th Cir. 2011); *see also O'Reilly v. Valley Ent'mt, Inc.*, 2011 WL 13258234, at *2-4 (specific jurisdiction

over infringing defendant reasonable in default judgment) (N.D. Cal. Jan. 4, 2011), *adopted by*, 2011 WL 13260734 (N.D. Cal. Feb. 16, 2011).

The Court also has subject-matter jurisdiction over this action, as Plaintiffs' claims arise under the federal Copyright Act. *See* 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

### E.   The *Eitel* Factors Favor Entry of Default Judgment

"[E]xcept for the strong policy favoring a decision on the merits, which is not dispositive, the Eitel factors weigh in favor of granting the Motion." Set Broadcast Default Judgment Order at 5. Defendants Labossiere and Johnson owned, operated, and managed Set Broadcast and willfully and flagrantly induced the infringement of Plaintiffs' Copyrighted Works. The Court's determination that default was appropriate with respect to Set Broadcast applies equally to Defendants Labossiere and Johnson: the individuals behind the corporate entity.

#### 1.   *Plaintiffs Will Suffer Prejudice Absent Entry of Default Judgment*

Pursuant to the Court's September 5, 2019 Order to Show Cause and September 23, 2019 Order, Defendants' Answer has been stricken and Defendants have failed to participate in this litigation since their counsel withdrew in late April. Without a default judgment, Plaintiffs will be deprived of any remedy for the injuries Plaintiffs have sustained from Defendants' widespread infringement. *See Star Fabrics, Inc. v. 3Free NYC, Inc.*, 2013 WL 12124095, at *2 (C.D. Cal. Dec. 9, 2013) (first factor favors plaintiff where it would otherwise be unable to recover damages from infringer); *see also China Cent. Tele. v. Create New. Tech. (HK) Ltd.*, No. CV 15-01869 MMM (AJWx), 2015 WL 12732432, at *8 (C.D. Cal. Dec. 7, 2015) (same). The first *Eitel* factor weighs in favor of default judgment.

### 2.   The Merits of Plaintiffs' Claims and Sufficiency of the Complaint Weigh in Favor of Default Judgment

The second and third *Eitel* factors require that Plaintiffs "state a claim on which [they] may recover."[1]  *PepsiCo*, 238 F. Supp. 2d at 1175.  To state copyright infringement claims, Plaintiffs need only (1) "show ownership" and (2) a violation of "at least one exclusive right" under 17 U.S.C. § 106.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Plaintiffs satisfy both requirements.

**Ownership**:  Plaintiffs' ownership of their Copyrighted Works is uncontroverted.  Plaintiffs have already submitted a representative list of Copyrighted Works that were infringed through the Setvnow service, ECF Dkt. 53-3, Exh. 55, and certificates of registration issued by the Copyright Office for each Work, *id.*, Exhs. 4-54.  These certificates create a presumption of copyright validity and ownership.  17 U.S.C. § 410(c); *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

**Violation of Plaintiffs' Exclusive Right Under Copyright**:  Defendants intentionally induced the infringement of Plaintiffs' Copyrighted Works, specifically, the infringement of their exclusive right of public performance, 17 U.S.C. § 106(4).  ECF Dkt. 1.  Under the Supreme Court's decision in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005), a party that distributes a product "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."  A plaintiff establishes inducement liability in the Ninth Circuit liability by showing: "(1) distribution of a device or product [by defendant], (2) acts of infringement [by third parties], (3) an object [of the defendant] of promoting [the device's or product's] use to infringe copyright, and (4) causation."  *Columbia Pictures Indus.,*

---

[1] Unless otherwise noted, internal quotation marks have been omitted.

*Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (citing *Grokster*, 545 U.S. at 936-37).  The Complaint pleads all four elements.

*First*, Defendants distributed and sold the Setvnow service that enabled and encouraged the infringement of Plaintiffs' public performance right.  Compl. ¶¶ 1-4, 28-45, 49-50, 58-60; ECF Dkt. 53-1 ¶¶ 4-6; *see Fung*, 710 F.3d at 1033 ("services available on the Internet" provides a basis for inducement liability).

*Second*, Defendants' objective in distributing the Setvnow service was to facilitate third parties' unauthorized streaming, i.e., public performance, of Plaintiffs' Copyrighted Works.  Compl. ¶¶ 1-4, 29, 41-47.  Defendants thereby induced the direct infringement of Plaintiffs' public performance right.  *See TickBox TV LLC*, 2019 WL 1568698, at *9-10 (citing *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 446-47 (2014) (service that made Internet streams of content performed publicly)); *see also, e.g.*, *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) ("undisputed" that defendant's Internet streaming of television programs infringed public performance right); *Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1010 (C.D. Cal. 2011) ("*Zediva*") (Internet streaming of movies and television shows from remote DVD players to users is a public performance).

*Third*, Defendants knowingly distributed the Setvnow service "with the object of promoting its use to infringe copyright."  *Fung*, 710 F.3d at 1034 (quoting *Grokster*, 545 U.S. at 936-37).  Defendants encouraged their customers to use the service to obtain infringing streams of, among other things, "new movies, new releases," "Netflix exclusive shows," and "on-demand television shows and movies that you were looking for."  Compl. ¶¶ 41-43.

*Fourth*, the causation requirement is satisfied.  "[I]f one provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner, that person is liable for the infringement that occurs through the use of the service."  *Fung*, 710 F.3d at 1037.  Defendants distributed and

-9-

promoted the Setvnow service for infringing uses, and third parties predictably engaged in precisely that infringement.

### 3.     The Sum of Money at Stake is Proportional to the Harm

This factor considers the "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct. *Eitel* factor also weighs in favor of default judgment. *PepsiCo, Inc.*, 238 F.Supp.2d at 1176. As discussed *infra*, Plaintiffs seek an award of $7,650,000 in statutory damages—the same amount the Court awarded against co-Defendant Set Broadcast, LLC. This figure represents the statutory maximum of $150,000 for Defendants' inducement of the infringement of each of the 51 Copyrighted Works listed in Exhibit A to the Complaint. *See* 17 U.S.C. § 504(c)(1)-(2) (range of damages for willful copyright infringement is $750-$150,000 per work infringed). These 51 representative works represent a tiny fraction of the thousands of Plaintiffs' Copyrighted Works that Defendants likely illegally infringed, given that the Setvnow service not only offered "Thousands of On demand" options, but also streamed "over 500 Live" television channels with Plaintiffs' Copyrighted Works.

As noted, Plaintiffs' investigators used the Setvnow service to search for and obtain unauthorized streams of each of the Works listed in Exhibit A. *See* ECF Dkt. 53-1, ¶¶ 4-6. Defendants operated a successful illegal business: Set Broadcast had over 260,000 monthly subscribers. *See* ECF Dkt 53-2, ¶ 9. A significant percentage of those subscribers undoubtedly accessed unauthorized streams of some or all of those same Works, meaning Defendants' inducement of infringement of the Works was on a mass scale.

### 4.     There Is No Possibility of Dispute Regarding Material Facts

A defendant's failure to respond to a complaint indicates that "the likelihood that any genuine issue may exist is, at best, remote." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). As default has been entered against Defendants, there is no possible dispute concerning the material

-10-

facts because the factual allegations of Plaintiffs' complaint are taken as true. *PepsiCo*, 238 F. Supp. 2d at 1177; Set Broadcast Default Judgment Order at 1. This *Eitel* factor also weighs in favor of default judgment.

### 5.    There Is No Possibility of Excusable Neglect

There are no facts to suggest that Defendants' failure to respond to the Court's September 5, 2019 Order to Show Cause, or the Clerk's September 23, 2019 entry of default resulted from excusable neglect. Defendants failed to comply with the Court's Orders, failed to respond to multiple communications from Plaintiffs' counsel and attempts by Plaintiffs to move this litigation forward, and otherwise failed to participate in this litigation.

### 6.    The Policy for Decisions on the Merits Does Not Preclude Default Judgment

The final *Eitel* factor considers the preference for deciding cases on the merits, *see Eitel*, 782 F.2d at 1471-72, but "this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered," *Warner Bros. Ent'mt Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004). Defendants' default is the reason there can be no decision on the merits. This factor should not reward Defendants' refusal to satisfy their obligations to this Court and to Plaintiffs.

### F.    Plaintiffs Are Entitled to All of Their Requested Relief

### 1.    Plaintiffs' Request for Statutory Damages for Willful Copyright Infringement Is Reasonable

The Copyright Act authorizes statutory damages of $750 to $30,000 per infringed work, and enhanced statutory damages of up to $150,000 per infringed work for willful infringement. 17 U.S.C. § 504(c)(1)-(2). "Statutory damages are particularly appropriate in a case . . . in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiffs actual damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

-11-

"Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant" in order to deter future infringement.  *L.A. News Serv. v. Reuters Tele. Int'l, Ltd.* 149 F.3d 987, 996 (9th Cir. 1998).  Here, an award of $7,650,000 reflects the statutory maximum of $150,000 for each of the 51 representative works infringed by Defendants.  That award would serve the most fundamental purposes of statutory damages: compensation, punishment, and deterrence.  Though this amount cannot compare to the harm caused by the widespread infringement of Plaintiffs' Copyrighted Works, the magnitude of this award will serve as a deterrent to other wrongdoers.

### (a)    Willfulness

As pled in the Complaint, Defendants willfully induced the infringement of Plaintiffs' Copyrighted Works.  *See Caridi*, 346 F. Supp. 2d at 1074 ("Because of the entry of default … the Court must take [plaintiffs'] allegation of willful infringement as true.").  Defendants' advertisements and promotions for the Setvnow service leave no doubt about the character of its infringement.  Setvnow was a service that promised access to "500+ channels" with "Thousands of On Demand entertainment options" for "ONLY $20 PER MONTH."  Compl. ¶ 29; *see also* ECF Dkt. 53-2, ¶ 6 (quoting sponsored reviewers); Set Broadcast Default Judgment Order at 6 ("as evidenced by Set Broadcast's numerous advertisements and promotions for the Setvnow service touting access to "500+ Channels" and "New Releases," including movies still in theaters, the Court determines that Set Broadcast's infringement was willful.").

### (b)    Number of Registered Works

Plaintiffs have submitted a representative sample of 51 registered Copyrighted Works that investigators confirmed were illegally streamed on the Setvnow service.  *See* Compl. ¶ 16; ECF Dkt. 53-1, ¶¶ 4-6; ECF Dkt. 53-2, ¶¶ 11-

-12-

62, Exs. 4-55 (list of infringed Copyrighted Works and corresponding Certificates of Registration).  As discussed *supra*, these 51 representative works represent a tiny fraction of willful and intentional harm Defendants inflicted upon Plaintiffs. Defendants also appear to have had over 260,000 monthly subscribers to the Setvnow service, thus the sheer *number* of unauthorized streams, i.e., infringing public performances, of Plaintiffs' Copyrighted Works, likely reached the hundreds of thousands.  *See* ECF Dkt. 53-2, ¶ 9, Ex. 3.

>            *(c)*     *The Statutory Maximum Is Proportional to the Harm Inflicted by Set Broadcast*

This Court awarded the statutory maximum against Set Broadcast for its widespread, willful, and flagrant inducement—and its failure to defend this action. Set Broadcast Default Judgment Order at 6.  This reasoning applies equally to Defendants Labossiere and Johnson.

Other courts in this Circuit and beyond have awarded the statutory maximum in default judgment actions involving similar widespread and flagrant infringement. *See, e.g.*, *Perfect 10, Inc., v. Talisman Comm. Inc.,* No. CV99-10450 RAP MCx, 2000 WL 364813, *3-4 (C.D. Cal. Mar. 27, 2000) (awarding maximum statutory damages per infringed work for willful infringement on default judgment); *Caridi*, 346 F. Supp. 2d at 1074 (same); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511-12 (E.D. Va. 2003) (same).  Considering the sheer volume of unauthorized content available on the Setvnow service, its advertised (and actual) availability round-the-clock, and Defendants' 260,000 monthly users—Defendants infringed Plaintiffs' Copyrighted Works willfully, flagrantly, and on a massive scale.

The $7,650,000 award Plaintiffs seek is proportional to the immense harm Defendants have inflicted on Plaintiffs by inducing the widespread, unauthorized streaming of Plaintiffs' Copyrighted Works.  Defendants have deprived Plaintiffs of their exclusive rights to control how, when, and to whom they will disseminate their

Copyrighted Works.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors."); *see also Zediva*, 824 F. Supp. 2d at 1012-13 (defendants' unauthorized streaming "interfere[s] with Plaintiffs' ability to control the use and transmission of their Copyrighted Works, thereby causing irreparable injury.").

Defendants' illegal conduct has irreparably undermined the legitimate market in which consumers can purchase access to the same works, into which Plaintiffs have invested significantly.  *See e.g.*, *Grokster*, 545 U.S. at 928-29 (discussing harms from unauthorized distribution of copyrighted works); *China Cent. Tele.*, 2015 WL 3649187, at *13 (infringing video streaming service caused irreparable harm because it "interfered with plaintiffs' ability to develop a lawful market for internet distribution"); *TickBox*, 2018 WL 1568698, at *12-13.  As is evident from Defendants' advertising campaign, the Setvnow service was intended to compete with authorized and legitimate offerings, including authorized cable and broadcast networks and licensed VOD services.  *See* Compl. ¶¶ 1-4, 42-44.  Defendants have willfully infringed Plaintiffs' Copyrighted Works and, in doing so, caused Plaintiffs and their entire business model immense damage.  *See Disney Enter. v. VidAngel*, 869 F.3d 848, 866 (9th Cir. 2017) (unauthorized streaming "service undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees" causing irreparable harm). The $7,650,000 statutory damages sought here therefore represents only a fraction of the actual damages inflicted by Defendants on Plaintiffs.

(d)    *Plaintiffs Are Entitled to a Permanent Injunction*

The Copyright Act authorizes courts to grant injunctive relief "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.*, 991

-14-

F.2d 511, 520 (9th Cir. 1993).  This is so even where, as here, the infringer has apparently voluntarily ceased its infringing activities.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221-22 (C.D. Cal. 2007) (rejecting purported voluntary "reformation" by infringer and imposing permanent injunction); *see also Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (affirming permanent injunction where defendant voluntarily ceased infringing conduct).   Accordingly, this Court granted the requested injunctive relief against Set Broadcast in its July 31, 2019 order.  Plaintiffs respectfully request that Defendants Labossiere and Johnson similarly be enjoined from infringing Plaintiffs' Copyrighted Works.  There is a significant threat of continuing irreparable injuries to Plaintiffs, which, in conjunction with the strong public interest in the enforcement of the copyright laws, outweighs the nominal hardship to Defendants.

*First*, there is a significant threat of future infringement and voluntary cessation of infringing conduct is no defense to a permanent injunction.  In *Grokster*, for example, the defendant-infringer attempted to avoid a permanent injunction by asserting voluntary "reformation" of its infringing ways.  *Grokster*, 518 F. Supp. 2d at 1221-22.  Rejecting these self-serving statements, the district court found that the evidence in the record "warranted … an inference" of future infringement.  *Id.* at 1221.  As is the case here, the "'overwhelming' evidence of [defendant's] illegal objective … resulted in a 'staggering' amount of infringement." *Id.*  And, like the defendant in *Grokster*, Defendants' Setvnow "business model has depended on inducement and the company would financially benefit from further infringement." *Id.*

Defendants apparently sold hundreds of thousands of monthly subscriptions to their Setvnow service, and they sold these subscriptions by advertising the availability of "Thousands of On Demand" options and "over 500 live" television channels that featured Plaintiffs' Copyrighted Works.  As in *Grokster*, Defendants have every financial incentive to return to their infringing ways.   While the

Setvnow service is apparently no longer available, absent a permanent injunction, nothing will prevent Defendants from launching yet another streaming service that serves the exact same function as the Setvnow service: providing high-quality, high-speed, and completely illegal streams of Plaintiffs' Copyrighted Works to customers.  "[T]he entire purpose of an injunction is to take away defendant's discretion not to obey the law."  *Canadian Lumber Trade Alliance v. United States*, 441 F. Supp. 2d 1259, 1266 (CIT 2006).  In light of their willful and egregious conduct, Defendants should not be afforded that discretion.

*Second*, an award of monetary damages alone will not adequately compensate Plaintiffs for the loss of control over the Copyrighted Works, the damage to their business goodwill, and harm to the continued advancement of the legitimate online market for distribution of creative works.  *See TickBox*, 2018 WL 1568698, at *13 ("[I]t is unlikely that money damages could adequately compensate for difficult-to-quantify harms to Plaintiffs' business models and relationships" from unauthorized streaming); *Zediva*, 824 F. Supp. 2d at 1013 (same).  Moreover, given Defendants' default, collecting any monetary award will likely prove quite challenging.  Under these circumstances, a monetary remedy is insufficient.  *See, e.g.*, *Grokster*, 518 F. Supp. 2d at 1219 ("Damages are no remedy at all if they cannot be collected…."); *Lava Records, LLC v. Ates*, Civ. A-05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (awarding permanent injunction because of "the need to prevent irreparable harm to Plaintiffs, which will not be remedied by a damage award that may or may not be collectible").

*Third*, the balance of hardships favors Plaintiffs.  Any "harm" to Defendants "does not merit significant equitable protection" as it is the result of its own illegal conduct.  *VidAngel*, 869 F.3d at 867.  In contrast, absent a permanent injunction, Plaintiffs will face the ongoing threat of continuing, irreparable harm by Defendants and future infringement.

1    *Fourth*, "the public has a compelling interest in protecting copyright owners'

2    marketable rights to their work and the economic incentive to continue creating

3    television programming and motion pictures."  *VidAngel*, 869 F.3d at 867.

4        Plaintiffs respectfully request that the Court enter the proposed permanent

5    injunction against Defendants.

6                         *(e)    Post-Judgment Interest*

7        Plaintiffs respectfully request post-judgment interest calculated "at a rate

8    equal to the weekly average 1-year constant maturity Treasury yield, as published

9    by the Board of Governors of the Federal Reserve System, for the calendar week

10   preceding the date of the judgment." 28 U.S.C. § 1961(a).

11   **III.    CONCLUSION**

12       Plaintiffs respectfully request that the Court enter default judgment against

13   Defendants.

14

15   DATED:  October 7, 2019            MUNGER, TOLLES & OLSON LLP

16

17

18                                 By:     */s/ Kelly M. Klaus*
                                        _____
19                                        KELLY M. KLAUS
                                        Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT
CASE NO. 2:18-CV-03325-MWF (AS)